# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

ANTINNA SHUFORD,

     Plaintiff,

                                Case No.

v.

                                Hon.

MUSASHI AUTO PARTS MICHIGAN, INC.,

     Defendant.

---

Batey Law Firm, PLLC
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com

---

## **COMPLAINT AND JURY DEMAND**

NOW COMES, Plaintiff, Antinna Shuford, (hereinafter "Plaintiff"), by and through her attorneys, Scott P. Batey and the Batey Law Firm, PLLC, and for her Complaint against Defendant states as follows:

1.     Plaintiff is a resident of the City of Battle Creek, County of Calhoun, and State of Michigan.

2.     Defendant, Mushashi Auto Parts, Inc., is a domestic profit corporation whose registered agent is Timothy Osterhouse, whose registered office address is

26 Sheldon Blvd. SE, Apt. 302, Grand Rapid, MI 49503, and who is duly authorized to do business in the State of Michigan.

3.     The events producing the original injury occurred in the County of Calhoun, State of Michigan and jurisdiction and venue are proper in the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1391(b) & (c).

4.     Plaintiff brings this action for damages stemming from the acts and/or omissions of Defendant constituting harassment, discrimination and adverse employment action which resulted in both economic and emotional damages to Plaintiff in violation of 42 U.S.C. §1981, the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2201, *et seq*.

5.     The amount in controversy exceeds $75,000.00 and is otherwise within the Jurisdiction of this Court.

## **GENERAL ALLEGATIONS**

6.     Plaintiff incorporates by reference paragraphs 1 through 5 of the Complaint as though fully set forth herein.

7.     Plaintiff is an African American female who began her employment with Musashi in January 2018 and she was last employed by Musashi as a Piper.

8.     Plaintiff's employment with Defendant began smoothly, and she was transferred from 1st shift to 2nd shift once her supervisors deemed her competent.

2

9.     Almost immediately upon being transferred to the 2nd shift rotation (6:00 p.m. to 6:00 a.m.), Plaintiff's supervisor/trainer Shawn Mabin began to sexually harass her.

10.     Mabin was Plaintiff's supervisor and trainer, and she was required to work closely with him. While training her, Mabin made several unwelcome, sexually explicit remarks to Plaintiff.

11.     Mabin asked Plaintiff "What size dick do you prefer," and grabbed her breasts and buttocks. He also made several sexual requests of Plaintiff, asking her to "come fuck" him.

12.     Plaintiff let Mabin know his comments were unwelcome, and tried desperately to avoid him. When he attempted to grope her she would try to dodge his reach and when he approached her and began making sexual comments and demands, she would attempt to walk away.

13.     Plaintiff was terrified of losing her job, and did not want to be viewed as a problem by management.

14.     Plaintiff began to fear entering the building to work, because she knew she would be subjected to physical and verbal sexual assault and harassment.

15.     Despite Plaintiff's constant pleading, Mabin did not relent in his sexual assault and harassment of her, but instead, the abuse escalated and became more frequent.

16.    In March 2018, Plaintiff's stress and fear of continued abuse culminated in her leaving work, and being hospitalized for high blood pressure and a nervous breakdown.

17.    Following Plaintiff's hospitalization, she was asked to meet with Mytonya in Defendant's Human Resources Department. Mytonya asked Plaintiff if Mabin was sexually harassing her, which was common knowledge at the plant, as Mabin's comments and groping of Plaintiff were done publicly at work.

18.    Plaintiff confirmed he had been sexually harassing her.

19.    Mytonya instructed Plaintiff to return to her station, and stated that Defendant would "take care of" the situation.

20.    The next day, Plaintiff arrived at work and observed a group of employees whispering and pointing at her, including Birch, the Floor Sub-Leader, in retaliation for her complaints of sexual harassment.

21.    Birch then instructed Plaintiff to go home, indefinitely for no reason.

22.    The next day, Robin, Defendant Mushashi's HR Coordinator, called Plaintiff and told her to return to work.

23.    When Plaintiff returned to work, she was instructed to move to a fenced off station where a machine is sequestered by chain-links. A number of Plaintiff's co-workers, including Josh, Christine, and Amanda, and supervisors

began taunting her, in retaliation for her prior complaints, saying, "Put the monkey in her cage."

24.    Plaintiff told her co-workers that she found their remarks to be racist and discriminatory, and asked that they stop.

25.    Plaintiff then approached Birch, her supervisor, and complained of the comments about her being a "monkey in a cage," and also at this time complained to Birch regarding the widespread use of the word "nigger" throughout the factory, including many instances in which she was referred to both directly and indirectly as a "nigger" by multiple coworkers.

26.    Robin informed Plaintiff that she would raise the issue with the factory manager, but the comments continued.

27.    With Plaintiff sequestered at her own work station, Mabin's sexual harassment and assault intensified. Shortly after Plaintiff was transferred to her new station, Mabin snuck up on her from behind and thrust his pelvis into her so hard that she crashed painfully into the conveyor belt. He also continued to grope her and make sexually explicit remarks to her.

28.    Plaintiff's health continued to deteriorate as a result of the stress she suffered over Mabin's sexual harassment of her, and her co-workers' racist treatment toward her. Plaintiff lost weight and could not eat because she was so distraught.

29.     Plaintiff continued to wait for Defendant to intervene in her situation, but nothing was done. Plaintiff knew that management and supervisors were aware of the harassment she was enduring, because it was done openly on the plant floor, and she complained.

30.     In or about March 2018, Plaintiff's supervisor Markese Wyrick stated to her that she was, "just getting involved in too much drama."

31.     Following Wyrick's remarks to Plaintiff, Birch took her aside and asked if she was lying to her coworkers and supervisors regarding Mabin's behavior. Plaintiff responded that she had not lied about any of Mabin's actions.

32.     Almost immediately after Plaintiff ended her conversation with Birch, Mabin approached her, made an upward punching motion, and said, "I can break that pussy."

33.     Following Mabin's comment about "breaking her pussy" Plaintiff's co-worker Torran encouraged her to make another report to Defendant's Human Resources Department. Plaintiff took her coworker's advice and reached out to Robin in Human Resources, again.

34.     During the meeting, at which Birch and Robin were present, Plaintiff was placed on indefinite suspension, and no explanation for the suspension was given, other than that "there was a situation."

35.     Following her suspension, Plaintiff repeatedly called Defendant and inquired as to when she could return to work. She never received an answer. Ultimately, Defendant's employees ignored Plaintiff's calls and messages.

36.     Defendant's "suspension" of Plaintiff amounts to a constructive discharge, as a direct result of the hostile work environment created by Defendant and its agent(s) or employee(s).

37.     Plaintiff was constructively discharged, having been suspended indefinitely without any further communication from Defendant.

38.     At all times relevant, Defendant was Plaintiff's employer within the meaning of 42, USC § 1981, Title VII of Civil Rights Act of 1964 and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, et seq. ("ELCRA").

39.     At all times relevant, Mabin was Plaintiff's trainer/supervisor.

40.     Defendant's actions were intentional, or were carried out with reckless indifference to Plaintiff's rights.

41.     On January 26, 2021, the EEOC issued a right to sue letter.

## COUNT I
## RACIAL DISCRIMINATION IN VIOLATION OF 42 U.S.C. §1981

42.     Plaintiff incorporates by reference paragraphs 1 through 41 of the Complaint as though fully set forth herein.

43.     Plaintiff belongs to a protected class as an African American and as a female.

44.     Plaintiff was subjected to unwelcome communication and conduct due to her race including being treated differently and in a more hostile manner than similarly situated Caucasian employees, and being more closely scrutinized than similarly situated Caucasian employees.

45.     The racially and sexually charged conduct towards Plaintiff was unwelcome and Plaintiff complained to her supervisor, Birch, and Robin of Defendant's Human Resources Department.

46.     Defendant's conduct was intentional and motivated by Plaintiff's race as an African-American.

47.     The conduct was so severe and/or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile and/or abusive.

48.     Plaintiff believed her work environment to be hostile and abusive as a direct result of Defendant's conduct.

49.     Plaintiff suffered adverse tangible employment actions as a result of the hostile work environment, including termination by constructive discharge.

50.     The ongoing and continuing unwelcome conduct and
communication was intended to and did substantially interfere with Plaintiff's
employment and/or created an intimidating, hostile, or offensive work environment
for Plaintiff and Plaintiff was ultimately terminated by constructive discharge due
to her race.

51.     Pursuant to 42 U.S.C. §1981 Plaintiff was guaranteed the right to be
free from discriminatory treatment and harassment and/or retaliation,  based upon
her race.

52.     Plaintiff's race was a factor in Defendant's decisions,
actions, treatment, conduct and attitude towards Plaintiff.

53.     Plaintiff was subjected to repeated and continuous discriminatory
treatment, to the point where her status as an employee has been detrimentally
affected by Defendant and Plaintiff has been subjected to work in a hostile work
environment.

54.     Plaintiff is entitled to punitive, exemplary and compensatory damages
pursuant to 42 U.S.C. §1981 as a result of each and every violation of the act,
including costs and reasonable attorneys' fees.

55.     Because of the unlawful conduct of Defendants, their agents,
representatives and employees, and as a direct and proximate cause of such
conduct, Plaintiff has suffered damages including humiliation, embarrassment,

outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of

earnings and other employment benefits, and a loss of capacity for the enjoyment

of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor

and against Defendant in an amount in excess of $75,000.00, together with costs,

interest, and attorney fees and any other relief this Honorable Court deems

appropriate and just.

## COUNT I
## SEXUAL HARASSMENT/DISCRIMINAITON IN VIOLATION
## OF TITLE VII AND ELCRA - HOSTILE WORK ENVIRONMENT

56.     Plaintiff incorporates by reference paragraphs 1 through 55 of the

Complaint as though fully set forth herein.

57.     Pursuant to Title VII of Civil Rights Act of 1964 and the Michigan

Elliott-Larsen Civil Rights Act, MCLA §37.2101, et seq. ("ELCRA") Plaintiff is

guaranteed the right to be free from discriminatory treatment and harassment from

her employer and/or supervisors on the basis of her sex.

58.     Defendant created a hostile work environment for Plaintiff as a result

of  her sex, and due to her status as a female, Plaintiff suffered sexual assault and

harassment by Defendant's employees and or agents.

59.      Defendant  failed  to  take  remedial  action  after  Plaintiff  reported

numerous incidents of sexual harassment and assault.

60.     Defendant had the knowledge that Plaintiff was being sexually harassed, assaulted, and retaliated against, as well as the ability to take remedial measures to stop the sexual harassment and assault, but failed/refused to do so.

61.     Defendant was Plaintiff's employer within the meanings of Title VII and the ELCRA.

62.     Plaintiff has been subjected to repeated and continuous sexual harassment, assault, discriminatory treatment, and retaliation based upon her sex by Defendant, its employees and agents to the point where her status as an employee has been detrimentally affected.

63.     Defendant and its agents, employees and representatives, breached and violated their duty to Plaintiff by reason of the following acts and/or omissions:

    a. Violating the laws against discrimination by engaging in sexual harassment in the workplace;

    b. Retaliating against employees who make complaints of discrimination and harassment; and

    c. Failing to take serious and corrective action when informed by Plaintiff that the conduct towards her was unlawful.

64.     Defendant owed Plaintiff, as a female employee, a duty to adequately advise its employees to refrain from discriminating against employees.

65.     Defendant breached and violated its duty owed to Plaintiff, by reason

of the following acts and/or omissions:

    a.  Failing to prevent or stop sexual harassment against Plaintiff causing a hostile work environment;

    b.  Taking adverse employment action against Plaintiff due to her sex; and

    c.  Retaliating against Plaintiff for her complaints of sexual harassment.

66.    As a direct and proximate result of the actions of Defendant, Plaintiff was the subjects of discriminatory conduct on the part of the Defendant.

67.    Plaintiff is entitled to punitive, exemplary, and compensatory damages pursuant to Title VII and the ELCRA as a result of each and every violation of the act, including costs and reasonable attorney's fees.

68.    Because of the unlawful conduct of Defendant and its agents and employees, and as a direct and proximate cause of such conduct, Plaintiff has suffered damages, including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

## COUNT II
## RACE DISCRIMINAITON IN VIOLATION
## OF TITLE VII AND ELCRA - HOSTILE WORK ENVIRONMENT

69.     Plaintiff incorporates by reference paragraphs 1 through 68 of the

Complaint as though fully set forth herein.

70.     Pursuant to Title VII of Civil Rights Act of 1964 and the Michigan

Elliott-Larsen Civil Rights Act, MCLA §37.2101, et seq. ("ELCRA") Plaintiff is

guaranteed the right to be free from discriminatory treatment and harassment from

their employer and/or supervisors on the basis of their sex.

71.     Defendant created a hostile work environment for Plaintiff as a result

of  Plaintiff's race, and due to her status as African American, Plaintiff suffered

racial discrimination by Defendant's employees and or agents.

72.      Defendant failed to take remedial action after Plaintiff reported

numerous instances of racial discrimination.

73.     Defendant had the knowledge that Plaintiff was being discriminated

against on the basis of race, as well as the ability to take remedial measures to stop

the discriminatory treatment, but failed/refused to do so.

74.     Defendant was Plaintiff's employer within the meanings of Title VII

and the ELCRA.

75.     Plaintiff has been subjected to repeated and continuous racial discrimination, and retaliation based upon her race by Defendant, its employees and agents to the point where her status as an employee has been detrimentally affected.

76.     Defendant and its agents, employees and representatives, breached and violated their duty to Plaintiff by reason of the following acts and/or omissions:

      a.  Violating the laws against discrimination by engaging in racial discrimination in the workplace;

      b.  Retaliating against employees who make complaints of discrimination and harassment; and

      c.  Failing to take serious and corrective action when informed by Plaintiff that the conduct towards her was unlawful.

77.     Defendant owed Plaintiff, as an African American employee, a duty to adequately advise its employees to refrain from discriminating against employees.

78.     Defendant breached and violated its duty owed to Plaintiff, by reason of the following acts and/or omissions:

      d.  Failing to prevent or stop racial discrimination against Plaintiff causing a hostile work environment;

      e.  Taking adverse employment action against Plaintiff due to her race;

and

  f. Retaliating against Plaintiff for her complaints of racial discrimination.

79. As a direct and proximate result of the actions of Defendant, Plaintiff was  the subject of discriminatory conduct on the part of the Defendant.

80. Plaintiff is entitled to punitive, exemplary, and compensatory damages pursuant to Title VII and the ELCRA as a result of each and every violation of the act, including costs and reasonable attorney's fees.

81. Because of the unlawful conduct of Defendant and its agents and employees, and as a direct and proximate cause of such conduct, Plaintiffs have suffered damages, including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiffs respectfully requests judgment in their favor and against Defendants in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

## **COUNT III**
## **RETALIATION IN VIOLATION  OF TITLE VII AND ELCRA**

82. Plaintiff incorporates by reference paragraphs 1 through 81 of the

Complaint as though fully set forth herein.

83.     Pursuant to Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, et seq., and Title VII, Plaintiff is guaranteed the right to be free from discriminatory treatment and harassment from their employer and/or supervisors on the basis of her sex and race.

84.     Plaintiff was sexually harassed by her immediate supervisor.

85.     Plaintiff was racially discriminated against by coworkers and supervisors.

86.     Defendant created a hostile work environment for Plaintiff by way of continuous comments, remarks, and conduct based on sex and race, carried out by Defendant's agents and employees, and with Defendant's knowledge.

87.      Plaintiff engaged in a protected act under Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, et seq., by complaining of sexual harassment.

88.      As a result of Plaintiff's protected activity, she was retaliated against by Defendant, including Defendant's employees, agents, and supervisors.

89.      As a result of engaging in a protected activity, Plaintiff was

subjected to hostile and offensive conduct by co-workers and when she complained to Defendant, no remedial actions were taken.

90.     Defendant owed Plaintiff as an African American, female employee, a duty to adequately advise its employees to refrain from discriminating and retaliating against other employees.

91.     Defendant owed Plaintiff a duty to not retaliate against her for making complaints of racial discrimination, sexual harassment, and assault.

92.     As a direct and proximate result of the actions of Defendant, Plaintiff was the subject of discriminatory conduct and retaliation.

93.     Because of the unlawful conduct of Defendant and its agents and employees, and as a direct and proximate cause of such conduct, Plaintiff has suffered damages, including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

Respectfully submitted,

**BATEY LAW FIRM, P.L.L.C.**

BY: /s/Scott P. Batey

SCOTT P. BATEY (P54711)

Attorney for Plaintiff

30200 Telegraph Road, Suite 400

Bingham Farms, MI  48025

(248) 540-6800

sbatey@bateylaw.com

Dated:  February  **BLANK**, 2021

## <u>DEMAND FOR  JURY TRIAL</u>

NOW COMES Plaintiff, Antinna Shuford, by and through her attorneys, Scott P. Batey and the Batey Law Firm, PLLC, and hereby demands a trial by jury on all issued allowed by law.

Respectfully submitted,

**BATEY LAW FIRM, P.L.L.C.**

BY: /s/Scott P. Batey

SCOTT P. BATEY (P54711)

Attorney for Plaintiff

30200 Telegraph Road, Suite 400

Bingham Farms, MI  48025

(248) 540-6800

sbatey@bateylaw.com

Dated:  February 16, 2021